IN THE MATTER OF FRANK J. PLANER AN
ATTORNEY-AT-LAW.

November 9, 1983.

*Colette A. Coolbaugh* appeared on behalf of the District II Ethics Committee.

The respondent did not appear although attempts were made to notify him at his last known addresses in Miami, Florida and in Quito, Ecuador.

## ORDER

This matter having come before the Court on an order to show cause why FRANK J. PLANER of HACKENSACK should not be disbarred or otherwise disciplined for his violation of *DR* 1–102(A)(3), (4), (5),(6) and *DR* 9–102(B)(4), and said FRANK J. PLANER having failed to appear before this Court on the return date of said order to show cause, and good cause appearing

It is ORDERED that the report of the Disciplinary Review Board recommending that respondent be disbarred is hereby adopted; and it is further .

ORDERED that FRANK J. PLANER be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that FRANK J. PLANER be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that FRANK J. PLANER reimburse the Administrative Office of the Courts for administrative costs, including production of transcripts; and it is further

ORDERED that respondent be served by Certified Mail to his last known address and by publication of this Order in two consecutive issues of the New Jersey Law Journal; and it is . further

ORDERED that respondent comply with all the regulations of the Disciplinary Review Board governing suspended, disbarred or resigned attorneys.

Decision and Recommendation of the Disciplinary
Review Board

To the Chief Justice and Associate Justices of the Supreme
Court of New Jersey:

This matter is before the Board based upon a Presentment
and supplemental Presentment filed by the District II Ethics
Committee which concern numerous misappropriations of client
funds by the respondent. Eight separate ethics complaints were
considered by the District II Ethics Committee in arriving at its
decision. These complaints may be summarized as follows:

### A. Schabilon Complaint

Emil Schabilon was involved in an automobile accident in
1975. He retained the respondent to represent him in a suit
against All State Insurance Company for payment of medical
bills incurred. The parties agreed to settle the case for $3,000.
A check in that amount was forwarded to the respondent by the
insurance company, and was endorsed by Mr. Schabilon. The
check was then deposited in respondent's trust account. Al-
though respondent pursuant to his agreement with his client,
was to retain $659 as his fee and pay the balance of $2,341 to the
various physicians involved, he failed to pay the physicians and
utilized the money for his own purposes. The Clients' Security
Fund later awarded $2,341 on Mr. Schabilon's claim against the
respondent.

The District II Ethics Committee concluded that the respon-
dent had violated DR 1–102(A)(3), (4), (5) & (6) and DR 9–
102(B).

### B. Levey Complaint

The respondent represented the Executors for the Estate of
Bertha Seeman in the sale of a parcel of real estate in Paramus,
New Jersey. As part of that representation, the respondent was
to hold in escrow $3,300 intended as a deposit for the purchase
of that property by Barry and Barbara Levey. The funds were

forwarded to the respondent on May 19, 1978. By mid-July of that year, the contract of sale was cancelled, and the Leveys by their attorney, requested the return of their deposit. Numerous requests were made in writing and by telephone between July and November of 1978 but to no avail. In November of 1979, the Clients' Security Fund awarded the Levey's $3,300 as reimbursement for funds taken by the respondent.

### C. Owen Complaint

The respondent represented Jesus and Rosalbo Pino in the purchase of property in Englewood, New Jersey from Anna B. Owen. At title closing on September 27, 1978, Ms. Owen's deed was delivered to the purchasers, and a check in the amount of $5,497.61 for the balance due on the sales price was given to Ms. Owen. That check, drawn on respondent's special trust account, was returned to Ms. Owen on October 2, 1978 stamped "uncollected funds" and "endorsement cancelled".

Ms. Owen eventually was paid the money due her by the court-appointed receiver for respondent. That payment was made possible by assignment by the Clients' Security Fund of a portion of its claim against the respondent's special trust account.

### D. Westall Complaint

In 1975, Jean Westall was involved in an automobile accident. The resulting suit was settled in December of 1977, subsequent to Ms. Westall's death, for $5,500. The attorney who represented Ms. Westall in that action disbursed court costs and attorneys fees from the settlement proceeds, and forwarded the balance of $3,496.65 to the respondent, who was attorney for the Estate of Jean Westall. Although the respondent notified the beneficiaries of the estate on June 5, 1978 of the amounts owed to each of them, he failed to make the promised disbursements. The Clients' Security Fund later awarded the sum of $1508.81 to the administrator of the estate.

## E. Marin Complaint

An attorney associated with the respondent represented Alcides Marin to recover for damages sustained in an automobile accident. The matter was settled prior to trial. The settlement provided that one insurance company was to pay $6,000 to Mr. Marin and the second insurance company was to pay $1,500. Both checks were to be made payable to Mr. Marin and his attorney.

Thereafter, on October 11, 1978, a release allegedly executed by Alcides Marin was delivered to the law firm for the first insurance company by respondent's office manager. A $6,000 check payable to Alcides Marin and respondent's associate was given to this office manager. That check, bearing the alleged signatures of Alcides Marin and respondent's associate, as well as that of the respondent, was deposited in the respondent's trust account. In fact, neither respondent's associate nor Alcides Marin had seen or signed the $6,000 check. Several weeks after obtaining the funds, the respondent paid to Mr. Marin the balance of the monies due, having subtracted attorneys fees and disbursements.

## F. Taggart Complaint

The respondent represented the Estate of Alma Hazzard, who died on March 26, 1974. Her adopted daughter, Charlotte Taggart, was the appointed Administratrix of the Estate. Charlotte Taggart died on July 10, 1978, at which time the Estate of Alma Hazzard account with the Garden State Bank had a balance of $13,210.36.

A check dated June 30, 1978 issued to "Frank J. Planer, P.A. Trust Account" in the amount of $12,000 was drawn on the Estate of Alma Hazzard account, with the notation "Disbur. to Heirs". Although the name of Charlotte Taggart appeared in the endorsement section, the check was not signed by Charlotte Taggart. The respondent contended that the $12,000 was an investment in PEP Company, Ltd., a company in which the

respondent, unbeknownst to Mrs. Taggart, had a substantial financial interest. However, the money was actually credited by respondent to the account of Banco del Pacifico.

The Clients' Security Fund subsequently awarded $11,694.08 to William Taggart, widower of Charlotte Taggart.

## G. Kelleher Matters

In May of 1975, the respondent commenced the representation of his wife's aunt, Madeline Kelleher, who was the Administratrix of the Estate of John J. Kelleher, her deceased husband. The respondent immediately arranged to have all of the decedent's individual bank accounts as well as accounts held jointly with his wife to be transferred to respondent's special account. On August 13, 1975, the respondent was notified of the existence of a will made by John J. Kelleher. On the following day, acting on the respondent's advice, Madeline Kelleher sold more than $140,000 in stocks and securities. This action was taken in a deliberate effort to diminish the assets of the estate and was not to the benefit of the estate. Additionally, because of respondent's actions and improvident advice, Madeline Kelleher was divested of property owned jointly with her deceased husband.

The respondent also caused stock which belonged to Bernadette Kelleher, niece of the decedent, to be released to him, thereby divesting Bernadette of that stock.

## H. Verrengia Complaint

The respondent, a stockholder in PEP corporation, represented to Remo Verrengia that he was authorized by the PEP stockholders to mortgage corporate owned property. This representation was supported by what later turned out to be a fraudulent stockholders' resolution. On May 12, 1978, Mr. Verrengia loaned $13,500 to the respondent as President of PEP Associates, Ltd. in return for a mortgage on the corporate property. Neither the corporation nor the stockholder's benefitted from this

loan, the proceeds of which were deposited in respondent's trust account. Litigation on this matter led to a settlement whereby the remaining two shareholders were each required to pay $1000 to Mr. Verrengia. Respondent's receiver was ordered to pay $8,000. The Clients' Security Fund later awarded an additional $3,500 to Mr. Verrengia.

### I. Clients' Security Fund Payments

In addition to the numerous complaints filed, the District II Ethics Committee received an affidavit filed by Kenneth J. Bossong, Counsel to the Clients' Security Fund. That affidavit discloses that, as of May 20, 1982 the Fund had paid to claimants against the respondent a total of $67,558.51. Many of these specific cases are included in the proceeding discussion. An additional matter received by the Fund which was not the subject of an ethics complaint resulted in awards totaling $44,-976.62 to five claimants.

### J. Notice

The respondent was temporarily suspended from the practice of law on December 6, 1978. Prior to that date, he deserted his practice and fled the state. In April of 1979, the respondent was indicted on four counts of embezzlement from the executor of the Estate of Jean Scillieri. The funds involved totaled $90,976.65, $44,976.62 was eventually awarded to the claimant heirs, as noted, *supra*.

Addresses were obtained for respondent in Miami, Florida and Quito, Ecuador. Written notice by both certified and regular mail was attempted. Although all documents forwarded by certified mail were returned, certain documents forwarded by regular mail were not returned to the Secretary of the District II Ethics Committee. The committee thus determined that appropriate notice had been given, and proceeded without the respondent.

The respondent failed to appear at the District II Ethics Committee hearings, nor did he file answers to the complaints lodged against him. The committee concluded that the respondent had violated *DR* 1–102(A)(1), (4) and (6) and *DR* 9–102(B)(4).

Notice of the scheduled Disciplinary Review Board hearing was forwarded to respondent's last known addresses in Florida and Ecuador by certified and regular mail. All letters were returned unclaimed.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Committee in finding unethical conduct on the part of respondent are fully supported by clear and convincing evidence. The respondent herein misappropriated large amounts of money from a number of clients utilizing methods ranging from outright taking to dummy investments. He apparently utilized these funds to bankroll a new life in South America. He has made no attempt to make his victims whole.

The Board is unanimous in its conclusion that the facts mandate a recommendation of disbarment.

The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for administrative costs, including production of transcripts.

DISCIPLINARY REVIEW BOARD

By:/s/    A. Arthur Davis, 3rd
A. Arthur Davis, 3rd,
Chairman

DATED: June 28, 1983